IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARGARITA R. FATHEREE,

       Plaintiff,

   vs.                            Civ. No. 19-704 JFR

ANDREW SAUL, Commissioner
of the Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record

(Doc. 16)[2] filed October 28, 2019, in connection with Plaintiff's *Motion to Reverse and Remand*

*for Rehearing, With Supporting Memorandum,* filed January 13, 2020.  Doc.  21.  Defendant

filed a Response on April 7, 2020.  Doc. 25.  And Plaintiff filed a Reply on April 22, 2020.

Doc. 26.  The Court has jurisdiction to review the Commissioner's final decision under 42

U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the

applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is

well taken and shall be **GRANTED.**

### I.  Background and Procedural Record

    Plaintiff Margarita R. Fatheree (Ms. Fatheree) alleges that she became disabled on

December 11, 2015, at the age of fifty-two, because of bipolar disorder, diabetes, migraines,

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 8, 9.)

[2]  Hereinafter, the Court's citations to Administrative Record (Doc. 16), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

sleep issues, and anxiety.  Tr. 78-79, 272.  Ms. Fatheree completed the twelfth grade in 1981 and

has three years of college education.  Tr. 45, 273, 320.  Ms. Fatheree has worked as an

administrative assistant and clerk, bookkeeper, data entry clerk, and proofreader.  Tr. 245-57,

273, 288-91.  Ms. Fatheree states she stopped working because of her medical conditions.  Tr.

272.

On March 25, 2016, Ms. Fatheree filed an application for Social Security Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401

*et seq*.  Tr. 212-13.  On May 5, 2016, she filed an application for Supplemental Security Income

("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Tr. 214-19.  On July 19, 2016,

State Agency medical consultant Mark A. Werner, M.D., reviewed the medical record evidence

at the initial level of consideration and assessed that the evidence indicated no significant

physical limitations.  Tr. 82, 94-95.  On July 25, 2016, State Agency psychological consultant

Abesie Kelly, Ph.D., also reviewed the medical evidence record.  Dr. Kelly prepared a

Psychiatric Review Technique ("PRT")[3] and rated Ms. Fatheree's degree of limitation in the area

of activities of daily living as mild; her difficulties in maintaining social functioning as mild; and

her difficulties in maintaining concentration, persistence or pace as moderate.  Tr. 83-87, 95-99.

Dr. Kelly also prepared a Mental Residual Functional Capacity Assessment ("MRFCA")[4] in

---

[3] "The psychiatric review technique described in 20 CFR §§ 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

[4] The MRFCA form instructions explain: "The questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion.  This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory,

which she noted certain moderate mental limitations and assessed, *inter alia*, that Ms. Fatheree
was "capable of all but skilled work."  Tr. 94-87, 96-99.  Based on the consultants' review of the
medical evidence record, it was determined that Ms. Fatheree was not disabled and her
applications were denied.  Tr. 88-89, 100-101.

At reconsideration, Ms. Fatheree reported that her panic attacks, anxiety and depression
were worse, and that she was spending more time at home.  Tr. 305, 307.  On December 29,
2016, State Agency medical consultant John Shane, M.D., reviewed the medical record evidence
and affirmed Dr. Werner's initial assessment that the evidence indicated no significant physical
limitations.  Tr. 108, 122.  On December 27, 2016, State Agency psychological consultant Ryan
Mendoza also reviewed the medical evidence record.  Consultant Mendoza prepared a PRT and
rated Ms. Fatheree's degree of limitation in the area of activities of daily living as mild; her
difficulties in maintaining social functioning as moderate; and her difficulties in maintaining
concentration, persistence or pace as moderate.  Tr. 108-11, 122-25.  Consultant Mendoza also
prepared a MRFCA in which he noted certain moderate mental limitations and one marked
mental limitation, and assessed, *inter alia*, that Ms. Fatheree could sustain simple and moderately
detailed tasks.  Tr. 112-114, 126-28.  Based on the medical evidence review, it was determined
that Ms. Fatheree was not disabled and her applications were denied at reconsideration.  Tr. 115,
129.

Upon Ms. Fatheree's request, Administrative Law Judge (ALJ) Ann Farris held a hearing
on February 1, 2018.  Tr. 37-70.  Ms. Fatheree appeared in person at the hearing with attorney

---

sustained concentration and persistence, social interaction and adaptation).  Any other assessment information
deemed appropriate may be recorded in the MRFC – Additional Explanation text box."  Tr. 84  Case law discussing
"Section I" and "Section III" therefore remains relevant.

3

representative Jeff Diamond.[5]  *Id*.  On August 30, 2018, ALJ Farris issued an unfavorable

decision.  Tr. 14-30.  On June 11, 2019, the Appeals Council issued its decision denying

Ms. Fatheree's request for review and upholding the ALJ's final decision.  Tr. 1-6  On August 1,

2019, Ms. Fatheree timely filed a Complaint seeking judicial review of the Commissioner's final

decision.  .

## II.  <u>Applicable Law</u>

### A.    <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income

disability benefits for adult individuals).  The Social Security Commissioner has adopted the

familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria

as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in
> "substantial gainful activity."[6]  If the claimant is engaged in substantial
> gainful activity, she is not disabled regardless of her medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical
> or mental impairment(s).  If the claimant does not have an impairment(s) or
> combination of impairments that is severe and meets the duration requirement,
> she is not disabled.

---

[5] Ms. Fatheree is represented in these proceedings by Attorney Francesca J. MacDowell.

[6] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R.
§§ 404.1572(a).  Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have
less responsibility than when you worked before.  *Id.*  Gainful work activity is work activity that you do for pay or
profit.  20 C.F.R. §§ 404.1572(b).

4

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.**   **Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal

standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir.

2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on

substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might

accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not

based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,*

373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of

evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the

[ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient

particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision

must "provide this court with a sufficient basis to determine that appropriate legal principles

have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the

agency. *Langley*, 373 F.3d at 1118.

**III. Analysis**

The ALJ made her decision that Ms. Fatheree was not disabled at step five of the

sequential evaluation.  Tr. 28-29.  The ALJ determined that Ms. Fatheree met the insured status

requirements of the Social Security Act through September 30, 2016, and that she had not

engaged in substantial gainful activity since her alleged onset date of December 11, 2015.

Tr. 19.  She found that Ms. Fatheree had severe impairments of bipolar disorder and diabetes

6

mellitus.  *Id.*  The ALJ also found that Ms. Fatheree's "other  medically determinable physical

impairments, including obesity, were non-severe impairments because they have not affected and

are not expected to affect the claimant more than minimally for a duration of twelve months or

longer[.]"  Tr. 20.  The ALJ determined that Ms. Fatheree's impairments did not meet or equal in

severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P,

Appendix 1.  Tr. 20-21.  Accordingly, the ALJ proceeded to step four and found that

Ms. Fatheree had the residual functional capacity to perform a full range of work at all exertional

levels but with the following nonexertional limitations:

> The claimant can perform simple and some detailed tasks, but no complex tasks.
> She should have no interaction with the general public, and only occasional and
> superficial interaction with coworkers.  She should work primarily with things
> rather than people.

Tr. 21.  The ALJ further concluded at step four that Ms. Fatheree was not capable of performing

her past relevant work.  Tr. 28.  Based on the RFC and the testimony of the VE, the ALJ

concluded at step five that there were jobs that exist in significant numbers in the national

economy that Ms. Fatheree could perform and that she was, therefore, not disabled.[7]  Tr. 28-29.

   In her Motion, Ms. Fatheree broadly argues that the ALJ's RFC is contrary to law and not

supported by substantial evidence.  Doc. 21 at 5-24.  In support, Ms. Fatheree contends that

(1) the ALJ, having accorded great weight to the State agency psychological consultants, failed

to incorporate all of the moderate limitations they assessed; (2) the ALJ's characterization of

Ms. Fatheree's mental condition as largely stable is not supported by substantial evidence;

---

[7] The ALJ identified (1) groundskeeper, DOT 406.687-010 (30,558 jobs nationally); and (2) hospital cleaner, DOT
323.687-010 (68,227 jobs nationally).  Tr. 29.

(3) the ALJ should have included greater restrictions based on Ms. Fatheree's diabetes; (4) the ALJ failed to provide legitimate reasons for discounting Ms. Fatheree's statements regarding the intensity, persistence and limiting effects of her symptoms; and (5) the ALJ's weighing of the lay person testimony is not supported by the record. *Id.* Ms. Fatheree additionally argues that the ALJ improperly relied on the VE testimony at step five because the RFC was under-inclusive. *Id.* at 24-25. Finally, Ms. Fatheree argues that because the hearing in this matter was held prior to July 16, 2018, the ALJ was not properly appointed under the Constitution's Appointments Clause and that the ALJ, therefore, did not have legal authority to preside over this case or to issue an unfavorable decision.[8] *Id.* at 25.

The Commissioner contends that the ALJ reasonably determined that Ms. Fatheree was capable of work with significant mental limitations and that the RFC is supported by substantial evidence. Doc. 25 at 3-15. In support, the Commissioner states that (1) the ALJ was not obligated to incorporate into the RFC the consultants' moderate limitations found in the worksheet section of their respective MRFCAs because the ALJ properly relied on their narrative portions, and that the ALJ nonetheless accounted for all of the moderate limitations by limiting Ms. Fatheree to unskilled work activity with limited social interaction; (2) the ALJ did not mischaracterize that Ms. Fatheree's symptoms related to her mental impairments appeared to improve after the spring of 2016 and remained largely stable through 2017 with medication and asking the Court to determine otherwise is an invitation to reweigh the evidence; (3) the ALJ

---

[8] On June 15, 2020, Ms. Fatheree filed a Notice of Supplemental Authority. Doc. 28. Therein, she noted that on June 15, 2020, the United States Court of Appeals for the 10th Circuit published *Carr v. Commissioner*, ___ F.3d ___ (10th Cir. No. 19-5079, June 15, 2020), wherein the Court held that an Appointments Clause challenge is an adversarial claim, which a party is required to raise before the agency below. *Id.* Ms. Fatheree, therefore, withdrew her claim that the ALJ did not have legal authority to preside over this case. *Id.*

accounted for and reasonably determined that Ms. Fatheree did not have any physical restrictions arising from her diabetes; (4) the ALJ provided specific inconsistencies between Ms. Fatheree's allegations and the objective medical evidence and other evidence of record to support discounting Ms. Fatheree's statements regarding the intensity, persistence and limiting effects of her symptoms; and (5) the ALJ provided several legitimate reasons that are supported by substantial evidence for discounting the third-party statement. *Id.* The Commissioner further contends that because the ALJ's RFC is supported by more than a mere scintilla of evidence, Ms. Fatheree's argument that the ALJ erred in relying on vocational expert testimony is without merit. *Id.* at 25. Lastly, the Commissioner contends that Ms. Fatheree failed to timely challenge the constitutional validity of the ALJ's appointment and that the claim as to that issue should be dismissed.[9]  *Id.* at 15-25.

### A.   RFC Assessment

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding)[10].  In assessing a claimant's RFC, the ALJ must consider the combined

---

[9] *See* fn. 8, *supra.*

[10] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to

effect of all of the claimant's medically determinable impairments, and review all of the
evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R.
§§ 404.1545(a)(2) and (3).  The ALJ must consider and address medical source opinions and
give good reasons for the weight accorded to a treating physician's opinion.  20 C.F.R.
§ 404.1527(b)[11]; SSR 96-8p, 1996 WL 374184, at *7.  If the RFC assessment conflicts with an
opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-
8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative
discussion describing how the evidence supports each conclusion, citing specific medical facts . .
. and nonmedical evidence."  *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at
*7).  When the ALJ fails to provide a narrative discussion describing how the evidence supports
each conclusion with citations to specific medical facts and nonmedical evidence, the court will
conclude that his RFC assessment is not supported by substantial evidence.  *See Southard v.
Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently
articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173,
177-78 (10th Cir. 2003) (unpublished).

       Here, the only medical opinion evidence in the Administrative Record related to
Ms. Fatheree's capacity to perform work-related mental activities is from nonexamining State
agency psychologist consultants.[12]  At the initial level of review, Dr. Abesie Kelly prepared an

---

the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27,
2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

[11] The rules in this section apply for claims filed *before* March 27, 2017.  20 C.F.R. § 404.1527.

[12] On December 15, 2016, Ms. Fatheree began treating with psychologist Brian Davis, Ph.D.  The Administrative
Record contains weekly treatment notes from December 15, 2016, through January 1, 2018.  Tr. 569-678.  On the
Intake Assessment form prepared by Dr. Davis, Ms. Fatheree reported a history of bipolar disorder and that the main
problem was depression and not getting the medications right, particularly since being diagnosed with diabetes.  Tr.

MRFCA.  In the worksheet section of the form,  Dr. Kelly found that Ms. Fatheree had *moderate limitations* in three of the four broad functional areas that the Social Security Administration has determined comprise the basic mental demands of unskilled work: (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, coworkers and work situations; and (3) dealing with changes in a routine work setting.  Tr.  84-85, 96-99; *see* 20 C.F.R. §§404.1520a(c)(3), 416.920a(c)(3); POMS §DI 25020.010A.3.a.  Dr. Kelly found that Ms. Fatheree had no limitations in the area of making judgments that are commensurate with the functions of unskilled work, the fourth broad functional area.  *Id.*  These four broad areas are represented on the MRFCA form as (1) understanding and memory limitations; (2) sustained concentration and persistence limitations; (3) social interaction limitations; and (4) adaptation limitations.  Tr. 85-86, 97-98.  In the area of understanding and memory, Dr. Kelly noted Ms. Fatheree had no limitations.  *Id.*  In the area of sustained concentration and persistence, Dr. Kelly noted Ms. Fatheree had *moderate limitations* in her ability (1) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (2) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  *Id.*  In the area of social interactions,

569.  She reported staying in her house for days at a time and having trouble sleeping.  *Id.*  She also reported a risk of danger to herself or others when she is depressed.  Tr. 570.  Dr. Davis's initial "Diagnostic Formulation" was "bipolar," and he recommended medication and weekly counseling.  Tr. 572.  The Administrative Record contains a total of fifty-two treatment notes prepared by Dr. Davis in which he consistently diagnosed Ms. Fatheree with either Bipolar II disorder moderate depressed with anxious distress in partial remission or Bipolar II disorder severe depressed with anxious distress in partial remission.  Tr. 569-678.  The Administrative Record, however, does not contain any opinion evidence from Dr. Davis regarding Ms. Fatheree's ability to do work-related mental activities.  That said, the Court notes that neither of the State agency psychological consultants had access to or the benefit of Dr. Davis's treatment notes at the time they prepared their assessments.

Dr. Kelly noted Ms. Fatheree had *moderate limitations* in her ability to accept instructions and respond appropriately to criticism from supervisors.  *Id.*   And in the area of adaptation, Dr. Kelly noted Ms. Fatheree had *moderate limitations* in her ability to respond appropriately to changes in the work setting.  *Id.*

In turn, Dr. Kelly assessed in the narrative portion of the MRFCA, *inter alia*, that while Ms. Fatheree may have some problems due to her bipolar symptoms, the "impact of the alleged limits does not wholly compromise [her] ability to function independently, appropriately and effectively on a sustained basis.  The clmt appears capable of all but skilled work."  Tr. 87, 99. Dr. Kelly went on to assess that Ms. Fatheree was able to perform work where interpersonal contact was routine but superficial, the complexity of tasks was learned by experience, and that the supervision required for routine, unskilled work was little.  *Id.*  Thus, Dr. Kelly's narrative addressed the moderate limitations she noted on the worksheet.[13]

At reconsideration, Dr. Mendoza also prepared an MRFCA and noted in the worksheet section that Ms. Fatheree had limitations in three of the four broad functional areas related to the mental demands necessary for unskilled work.  Tr. 112-14, 126-28.  In the area of understanding and memory, Dr. Mendoza noted Ms. Fatheree had no limitations.  *Id.*  In the area of sustained concentration and persistence, Dr. Mendoza noted Ms. Fatheree had *moderate limitations* in her ability (1) to maintain attention and concentration for extended periods; (2) to perform activities

---

[13] By limiting Ms. Fatheree to unskilled work, Dr. Kelly accounted for Ms. Fatheree's moderate limitation in her ability to respond appropriately to changes in the workplace.  *See Vigil v. Colvin*, 805 F.3d 1199, 1204 ("Unskilled work generally requires only the following: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting.") (citing SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).

within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* In the area of social interactions, Dr. Mendoza noted Ms. Fatheree had *moderate limitations* in her ability (1) to accept instructions and respond appropriately to criticism from supervisors; and (2) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* He also noted Ms. Fatheree had a *marked limitation* in her ability to interact appropriately with the public. *Id.* And in the area of adaptation, Dr. Mendoza noted a *moderate limitation* in Ms. Fatheree's ability to respond appropriately to changes in the work setting. *Id.*

Dr. Mendoza's narrative addressed the moderate and marked functional limitations he noted on the worksheet portion of the MRFCA. Tr. 113-14, 127-28. For instance, having noted three moderate limitations in the area of sustained concentration and persistence, Dr. Mendoza assessed in his narrative that Ms. Fatheree could understand and remember for simple and moderately detailed tasks, and could sustain concentration, persistence and pace for simple and moderately detailed tasks for at least two hours at a time, throughout the day, to complete a normal workday/workweek, despite occasional interruptions from psychologically based symptoms. *Id.* Having noted two moderate limitations and one marked limitation in the area of social interaction,  Dr. Mendoza assessed that Ms. Fatheree had the "ability to establish and maintain appropriate relationships while having infrequent interaction with peers and supervisors, and without exhibiting substantial behavior extremes." *Id.* Dr. Mendoza further assessed that Ms. Fatheree could handle limited general public interaction and would perform better with things rather than people. *Id.* Finally, having noted one moderate limitation in the

13

area of adaptation, Dr. Mendoza assessed that Ms. Fatheree could adapt to routine changes in the workplace.  *Id.*

The ALJ accorded the State agency consultant opinions "great weight" and broadly stated that they were consistent with and supported by the medical record.  Tr. 27.  Indeed, the opinions of the two doctors were generally consistent with each other, were uncontroverted by other medical opinion evidence, and comprised the sole medical opinion evidence regarding Ms. Fatheree's  mental limitations.[14]  The ALJ's RFC, however, reflects only some of the limitations found in the consultants' narratives.  Ms. Fatheree argues that having accorded great weight to the consultants' opinions, ALJ Farris was required to include in the RFC assessment all the moderate limitations the consultants assessed, or to adequately explain why she did not. Specifically, Ms. Fatheree argues that the ALJ failed to incorporate the consultants' moderate limitations in her ability (1) to respond appropriately to changes in the work setting; (2) to have only occasional interaction with peers and supervisors; and (3) to persist at a consistent pace and adhere to a schedule.  Doc. 21 at 6-9.  Ms. Fatheree also argues that the ALJ mischaracterized the symptoms arising from her mental impairments as "largely stable," and then improperly relied on that mischaracterization to discount the consultants' assessed limitations.  *Id.* at 9-10.

The Commissioner argues that the ALJ was under no obligation to incorporate into the RFC  the consultants' moderate limitations found in the worksheet section of the MRFCA because the ALJ properly relied on the narrative portions of their respective MRFCAs.  Doc. 25 at 11.  The Commissioner further argues that the consultants' narratives support that

---

[14] *See* fn. 12, *supra.*

Ms. Fatheree was generally capable of simple work with some social limitation, and that the

narratives were "mostly consistent" with the RFC.  *Id.*   The Commissioner invokes *Smith v.*

*Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), and *Vigil v. Colvin*, 805 F.3d 1199, 1204  (10th Cir.

2015), to support that limiting a claimant to particular kinds of work, such as unskilled, can

adequately account for moderate limitations in the ability to do work-related mental activities.[15]

Doc. 25 at 11-13.  The Commissioner, therefore, contends that it was reasonable for the ALJ to

find that limiting Ms. Fatheree to simple, routine tasks, with an SVP of two and limited social

interaction, sufficiently addressed all of the state agency psychologists' conclusions of moderate

limitations.  *Id.*  The Commissioner also contends that Ms. Fatheree's argument regarding the

ALJ's mischaracterization of the symptoms arising from her mental impairments is an invitation

for the Court to act as the factfinder and reweigh the evidence, which the Court should decline to

do.  *Id.* at 14.

        1.       **The ALJ's RFC Failed to Adequately Account For the**
               **Consultants' Section III Assessed Limitations**

The Tenth Circuit has specifically addressed the ALJ's responsibility in evaluating a

State agency psychological consultant's MRFCA in light of the instructions printed on the forms

---

[15] The Commissioner also cites *Hernandez v. Colvin*, 567 F. App'x 576, 582-83 (10th Cir. 2014) (unpublished), *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished), and *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished).  Doc. 25 at 12.  In *Hernandez*, the Tenth Circuit held that while a limitation to unskilled work in disability proceedings may be too broad to account for all the limitation where an ALJ makes specific findings regarding a claimant's mental impairments, that the limitation to unskilled work in this case was sufficient where the ALJ did not make any specific findings regarding mental limitations other than a possible learning disorder.  *Hernandez*, 567 F. App'x at 582-83.  In *Berumen*, the Tenth Circuit, relying on its holding in *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015), affirmed that the claimant's moderate limitations in concentration, persistence, and pace were accounted for by the ALJ's RFC for unskilled work.  *Berumen*, 640 F. App'x at 766.  In *Bales*, the Tenth Circuit found no error where the ALJ relied on the consultants' mental RFC opinions and incorporated the RFC limitations they suggested to account for claimant's moderate limitations in concentration, persistence and pace, *i.e.,* "simple and possibly some more complex instructions under routine supervisor"; "simple and some complex tasks," "adapt to a work situation," and "relate to others on a superficial basis."  *Bales*, 576 F. App'x at 797-98.

and certain sections of the POMS that describe the separate functions of Sections I and III.

Tenth Circuit case law instructs that an ALJ may not "turn a blind eye to moderate Section I

limitations" and that

> [i]f a consultant's Section III narrative fails to describe the effect that each of the
> Section I moderate limitations would have on the claimant's ability, or if it
> contradicts limitations marked in Section I, the MRFCA cannot properly be
> considered part of the substantial evidence supporting an ALJ's RFC finding.

*Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).[16]  Tenth Circuit case

law further instructs that there is no reversible error in evaluating opinion evidence or assessing a

claimant's RFC when an ALJ properly accounts for the effects of the limitations enumerated in

Section I of the MRFCA.  *See Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (finding

no reversible error regarding the ALJ's mental RFC assessment because the ALJ effectively

accounted for *all* the limitations indicated in Section I of the MRFCA) (emphasis in original);[17]

---

[16] In Section I, the State agency consultant found that the claimant had *moderate* limitations in the ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) interact appropriately with the general public; and (4) accept instructions and respond appropriately to criticism from supervisors.  *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015).  In Section III, the State agency consultant assessed that the claimant could "perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, relate superficially to the general public on a limited basis, and adapt to simple work situation."  *Id.*  The claimant argued that the State agency consultant's Section III assessment failed to account for the Section I moderate limitation in accepting instructions and responding appropriately to criticism from supervisors.  *Id.* at 618-19.  The Court disagreed and held that the Section III assessment that claimant could relate to supervisors and peers on a superficial work basis adequately encapsulated the Section I moderate limitation in claimant's ability to accept instructions and respond appropriately to criticism from supervisors.  *Id.* at 619.  The Court further held that the ALJ's RFC sufficiently captured the essence of the State agency consultant's Section III assessment by limiting claimant to simple work and stating that claimant could "interact with co-workers and supervisors, under routine supervision."  *Id.* at 620.

[17] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to maintain attention and concentration for extended periods, and *marked* limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the public.  *Nelson*, 655 F. App'x 626, 628 (10th Cir. 2016.)  In Section III, the State agency consultant assessed that "claimant is capable of carrying out simple instructions with routine supervision.  Claimant is capable of interacting appropriately with supervisors and coworkers on a superficial basis but not with the general public.  Claimant can adapt to a work situation."  *Id.* at 629.  The Court noted that the ALJ, in turn and without error, incorporated the Section III findings into the RFC.  *Id.*  The Court further noted that "[m]ore to the point, by limiting [claimant] to unskilled work, the ALJ effectively accounted for *all* the limitations noted in Section I[.]"  *Id.* (emphasis in original).  The Court

16

*Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (finding no reversible error regarding the ALJ's RFC assessment because the ALJ did not ignore the Section I limitations and the RFC assessment reflected the moderate limitations identified in Section I of the MRFCA);[18] *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (finding that the ALJ did not err in evaluating opinion evidence where he discussed only certain Section III findings because the ALJ acknowledged the distinction between Section I and Section III of the MRFCA and the Court found no contradiction between the two sections);[19] *Carver*, 600 F. App'x at 619 (finding no reversible error regarding the ALJ's mental RFC assessment because the ALJ sufficiently captured the essence of psychological consultant's Section III narrative which had adequately encapsulated the Section I limitations).

---

explained that "[e]ven though [the State agency consultant] noted marked limitations in [claimant's] ability to remember detailed instructions, carry out detailed instructions, and interact appropriately with the public, unskilled work does not require these abilities, nor does it require the ability to maintain attention and concentration for extended periods[.]" *Id.*

[18] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to (1) maintain attention and concentration for extended periods; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Lee v. Colvin*, 631 F. App'x 538, 542 (10th Cir. 2015). In Section III, the State agency consultant assessed that claimant could perform simple tasks, work with routine supervision, relate to supervisors on a superficial basis, and relate to peers on a superficial basis. *Id.* The ALJ adopted the Section III assessment. *Id.* at 541. The Court held that the Section III narrative and the ALJ's RFC "explained, accounted for, and delimited each of the moderate limitations expressed in the Section I of the MRFCA," and there was no error. *Id.*

[19] In Section I, the State agency consultant found the claimant had moderate limitations in the ability to (1) work in coordination with or proximity to others without being distracted by them; and (2) respond appropriately to changes in the work setting. *Fulton v. Colvin*, 631 F. App'x 498, 501-02 (10th Cir. 2015). The State agency consultant found the claimant had marked limitations in the ability to interact appropriately with the general public. *Id.* In Section III, the State agency consultant assessed that the claimant was able to perform simple and some complex tasks under ordinary supervision, able to interact with co-workers and supervisors for incidental work purposes but should avoid public contact, and able to adapt to some work change. *Id.* The claimant argued that the ALJ erred by failing to account for certain of the State agency consultant's Section I findings. *Id.* The Court held that the ALJ properly looked to the Section III narrative as the State agency consultant's opinion regarding mental RFC because the Section III assessment did not contradict the effects of the Section I limitations. *Id.*

Applying the Tenth Circuit's guidance here, the Court finds that the consultants' Section III narratives accounted for all of the moderate and marked limitations they assessed in Section I.  As such, the consultants' narratives are substantial evidence upon which the ALJ can rely.  *Fulton*, 631 F. App'x at 502.   Thus, while the Court agrees that the ALJ could have relied on the consultants' Section III narratives in determining the RFC, as the Commissioner argues, the issue here is that the ALJ chose not to.  For instance, the ALJ did not limit Ms. Fatheree to all but skilled work" as Dr. Kelly assessed, or "simple and moderately detailed tasks" as Dr. Mendoza assessed, but instead limited Ms. Fatheree to "simple and *some* detailed tasks." The ALJ did not limit Ms. Fatheree to "interpersonal contact [that] is routine but superficial" as Dr. Kelly assessed, or  "infrequent interaction with peers and supervisors," as Dr. Mendoza assessed, but instead limited Ms. Fatheree to "*occasional* and superficial interaction with coworkers."  Tr. 21.  Finally, the ALJ did not adopt Dr. Kelly's assessment that Ms. Fatheree could respond appropriately to changes in the workplace, *i.e.,* unskilled work, and did not adopt Dr. Mendoza's assessment that Ms. Fatheree could adapt to "routine, not frequent or intense workplace stress/changes."  Instead, the ALJ's RFC was silent as to this limitation.  In sum, the ALJ assessed modified limitations as to certain of the consultants' Section III assessed limitations, *i.e., some* detailed tasks and *occasional* social interactions, and omitted other limitations altogether, *i.e.,* no limitation on Ms. Fatheree's ability to interact with supervisors and no limitation on Ms. Fatheree's ability to respond appropriately to changes in the workplace, all of which resulted in a less restrictive RFC.  As such, the Commissioner's argument that the ALJ properly relied on the narrative portions of the consultants' MRFCAs necessarily fails. Moreover, the Court is not persuaded that the ALJ's less restrictive mental RFC assessment sufficiently captured the essence of the psychological consultants' Section III narratives, which

had adequately encapsulated their Section I limitations, such that there is no reversible error absent a legally sufficient explanation.[20]  *Carver*, 600 F. App'x at 619; *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only those parts that are favorable to a finding of nondisability"); *Sitsler v. Barnhart*, 182 F. App'x 819, 823 (10th Cir. 2006) ("SSR 96–8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment, and if it conflicts with the ALJ's conclusions then the ALJ must explain why it was not adopted.").

### 2.    A Limitation to Unskilled Work Does Not Account for Ms. Fatheree's  Moderate Limitations

Citing *Smith* and *Vigil*, the Commissioner nonetheless argues that the ALJ was under no obligation to account for the consultants' Section I moderate limitations because the Tenth Circuit has found that an ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity" and that a limitation to unskilled or simple work adequately accounts for moderate mental limitations.[21]  Doc. 25 at 11-12.  The Court, however, is not persuaded that the holdings in *Smith* and *Vigil* salvage the ALJ's failure to incorporate the consultants' moderate limitations into the RFC assessment.

In *Smith*, the claimant argued that the ALJ should have included moderate nonexertional impairments in assessing residual functional capacity based on the consultant's evaluation. *Smith*, 821 F.3d at 1268.  The consultant found in Section I of the MRFCA that the claimant had

---

[20] *See* Section III.A.3, *infra,* in which the Court finds the ALJ's reasons for discounting the consultants' limitations not supported by substantial evidence.

[21] *See* fn. 15, *supra.*

moderate limitations in the ability to (1) maintain concentration, persistence, and pace; (2) remain attentive and keep concentration for extended periods; (3) work with others without getting distracted; (4) complete a normal workday and work-week without interruption for psychologically based symptoms; (5) perform at a consistent pace without excessive rest periods; (6) accept instructions and respond appropriately to criticism by supervisors; (7) get along with coworkers or peers without distracting them or engaging in behavioral extremes; and (8) respond appropriately to changes in workplace; and (9) set realistic goals or independently plan. *Id.* The consultant applied the findings and concluded in Section III that the claimant could (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged. *Id.* The ALJ, in turn, arrived at a similar assessment, concluding that the claimant (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks. *Id.* at 1269. In its discussion, the Court noted that the notations of moderate limitations served only as an aid to the consultant's assessment and that the Court should compare the ALJ's RFC findings to the consultant's narrative opinion and not the Section I notations of moderate limitations. *Id.* at 1269 n.2. The Court favorably cited *Lee v. Colvin*[22] as an example of where the administrative law judge did not repeat the moderate limitations found in Section I, but incorporated the limitations by stating *how* the claimant was limited in the ability to perform work-related activities. *Id.* The Court also cited *Vigil v. Colvin*,[23] wherein the Court held that an administrative law judge can account for moderate limitations by limiting a claimant to particular kinds of work activity. *Id.* Based on the

---

[22] 631 F. App'x 538 (10th Cir. 2015 ) (unpublished).

[23] 805 F.3d 1199, 1204 (10th Cir. 2015).

reasoning in *Lee*, the Court rejected the claimant's argument that the ALJ should have assessed additional nonexertional limitations.[24]  *Id.*

In *Vigil*, the Tenth Circuit held that a claimant's moderate mental limitations in concentration, persistence, and pace were sufficiently taken into account by a restriction to unskilled work.  *Vigil*, 805 F.3d at 1204.  In that case, the ALJ found at step three that the claimant was moderately limited in the ability to maintain concentration for extended periods.[25]  *Id.* at 1203.  At the "more detailed" step four assessment of the claimant's RFC, the ALJ found some evidence indicating that the claimant had some problems with concentration, persistence, and pace "such that [he] could not be expected to perform complex tasks."  *Id*.  The ALJ further found that "the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicate[d] that Vigil retain[ed] enough memory and concentration to perform at least simple tasks." *Id.* at 1203-04.  The Court reasoned that the ALJ's RFC limiting claimant to unskilled work was appropriate in that case because the Social Security Administration's Program Operations Manual System indicated that the capacity to perform unskilled work includes the ability to maintain attention for extended periods of two-hour segments, but that concentration is "not critical."  *Id.* at 1204.  The Court further reasoned that unskilled work generally requires only the following:

(1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking

---

[24] Other judges in this District have declined to follow *Smith* on the grounds that it is inconsistent with *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007) and *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007) and that one panel of the circuit court cannot overrule another.  *See, e.g., Silva v. Colvin*, 203 F.Supp.3d 1153 (D.N.M. 2016), *Cordova v. Berryhill*, Civ. No. 17-611 SMV, 2018 WL 2138647, at *7 (D.N.M. May 9, 2018); *Jones v. Berryhill*, Civ. No. 15-842 LF, 2017 WL 3052748, at *5 n.6 (D.N.M. June 15, 2017).

[25] On the MRFCA form, there are eight questions related to a claimant's ability to sustain concentration and persistence.  One of those questions addresses a claimant's ability to maintain attention and concentration for extended periods.  Tr. 97.

judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting." *Id.* Therefore, because the claimant's moderate limitation in his ability to maintain concentration for extended periods did not impact the basic demands of unskilled work, the Court concluded that the evidence in the record regarding claimant's mental status supported the ALJ's RFC determination that limiting him to perform unskilled work would adequately account for his moderate limitations in concentration, persistence, and pace. *Id.*

Here, however, there are several distinguishable facts to support the inapplicability of *Smith* and *Vigil* in this case. As an initial matter, although the Commissioner contends that an RFC limitation to "unskilled" or "simple" work can account for moderate mental limitations, it is important to note that the ALJ did not limit Ms. Fatheree to "unskilled" work as in *Vigil*, or "simple, repetitive, and routine tasks" as in *Smith*. Here, the ALJ limited Ms. Fatheree to "simple and some detailed tasks." Tr. 21. As such, *Smith* and *Vigil* did not address whether a limitation to "simple and some detailed tasks" adequately accounts for multiple moderate limitations in the ability to do work-related mental activities. That aside, the VE identified jobs based on the ALJ's RFC that are considered unskilled;[26] however, for the reasons discussed below, the Court remains unpersuaded that neither *Smith* nor *Vigil* cures the ALJ's failure to

_____

[26] Having determined that this case requires remand based on the ALJ's RFC which is contrary to law and not supported by substantial evidence, the Court does not address Ms. Fatheree's claim that the ALJ's hypothetical to the VE was underinclusive given her failure to account for all of Ms. Fatheree's moderate mental limitations. *See Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991) ("[t]estimony elicited by hypothetical questions that do not relate *with precision* all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.").

22

incorporate all of Ms. Fatheree's moderate mental limitations into the RFC, even in the face of unskilled jobs.

Certain of the moderate limitations the consultants assessed here were not addressed in either *Smith* or *Vigil*.  For instance, *Vigil* only addressed the ability to maintain attention and concentration for extended periods.  Here, the consultants' moderate limitations in the area of sustained concentration and pace also included the ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Significantly, the latter requirement is considered critical for performing unskilled work and defined as being "usually strict."  *See* POMS DI 25020.010.B.3 – *Mental Abilities Critical for Performing Unskilled Work*.  The consultants also included moderate limitations in Ms. Fatheree's ability to accept instructions and respond appropriately to criticism from supervisors and to respond appropriately to changes in the work setting, neither of which the ALJ's RFC addressed, and both of which are also considered critical for performing unskilled work.[27]  *Id.*  Thus, given the narrow issue addressed in *Vigil* regarding whether unskilled work

---

[27] The Commissioner, citing *Lane v. Colvin*, 643 F. App'x 766 (10th Cir. 2016) (unpublished), argues that by limiting Ms. Fatheree to unskilled jobs with DOT people ratings for the lowest possible level of human interaction, that this encompasses any interaction with a supervisor.  Doc. 25 at 13-14.  In *Lane*, the ALJ denied benefits based, in part, on a vocational expert's testimony that the plaintiff could perform the job of bottling-line attendant.  However, the ALJ's decision did not make clear whether he had accepted or rejected a medical opinion that the plaintiff could not tolerate frequent or prolonged contact with supervisors or co-workers. 643 F. App'x at 769. The Tenth Circuit held that this was harmless error because the job of bottling-line attendant did not require frequent or prolonged interaction with supervisors or co-workers. *Id.* at 770.  The *Lane* court noted that the bottling-line attendant job was defined as one in which talking instruction or helping was "[n]ot [s]ignificant" and the activity of talking was "[n]ot [p]resent." *Id.*  Because the RFC accounted for the disputed limitation, there was no prejudice to the plaintiff.  The Court does not find, however, that *Lane* stands for the proposition that the moderate limitation regarding Ms. Fatheree's interaction with supervisors is encompassed by the ALJ's RFC, which limited Ms. Fatheree to "simple and some detailed tasks" and "occasional and superficial interaction with coworkers."

23

could adequately account for a moderate limitation in a claimant's ability to maintain attention and concentration for extended periods, the Court is not persuaded that *Vigil* stands for the broad proposition that unskilled work adequately addresses all of the moderate mental limitations at issue here and allows the ALJ to collapse these limitations into "simple and some detailed tasks," or unskilled work, to implicitly account for them. *See Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) ("[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments") (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (a restriction to "simple work" is a vague catch-all term which is insufficient to adequately account for mental limitations)).

Next, although *Smith* addressed more of the moderate limitations that are at issue here, it did not address the consultants' limitation in Ms. Fatheree's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, which is a limitation not assumed in unskilled or simple work as the Commissioner asserts.   *Vigil*, 805 F.3d

---

Additionally, the ALJ identified two jobs that Ms. Fatheree could perform; *i.e.,* groundskeeper, DOT 406.687-010, and hospital cleaner, DOT 323.687-010. Although it is correct that both jobs have a people rating of 8, which represents the lowest possible human interaction, at least one of the jobs identified, groundskeeper, requires occasional talking.  *See* Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (1993), p. 40. As such, the facts here are distinguishable.

The Commissioner also argues that limiting Ms. Fatheree to unskilled work accommodates any limitation in adaptation because unskilled jobs only require the ability to deal with changes in a routine work setting.  Doc. 25 at 13.  As previously discussed, however, the ALJ did not limit Ms. Fatheree to unskilled work, but limited her to, *inter alia,* simple and some detailed tasks.  Further, in the determination, the ALJ expressly associated the restriction of "simple and some detailed tasks" to Ms. Fatheree's ability to sustain concentration and persist (Tr. 25-26).  As such, the ALJ's RFC does not account for a limitation in the ability to respond to changes in the workplace, which is a mental demand critical to the performance of unskilled work.  *See Parker v. Berryhill*, 772 F. App'x 613 (10th Cir. 2019) (unpublished), wherein the Tenth Circuit explained that while the agency can sometimes account for mental limitations by limiting the claimant to a particular kind of work, unless the connection is obvious, the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion. *Id.* at 616.  The Court determined that the connection was not obvious and that restricting the complexity or pace of claimant's work did not adequately incorporate uncontradicted opinion evidence involving a moderate limitation in the ability to respond appropriately to usual work situations and changes in a work setting. *Id.*

at 1204.  But separate and apart from that, it is significant to point out that central to the Court's reasoning in *Smith* for finding that the ALJ was not required to specifically adopt or discuss each individual limitation described in Section I of the MRFCA was that the ALJ's RFC was consistent with the consultant's Section III assessment and fully incorporated the functional limitations of the claimant's moderate nonexertional limitations.  *Smith*, 821 F.3d at 1268-69. Indeed, in *Lee v. Colvin*, the case on which the Court relied upon in *Smith*, the ALJ adopted "essentially verbatim, the limitations from Section III of the MRFCA."  *Lee,* 631 F. App'x at 541.  Here, however, the ALJ's RFC is *not* consistent with the consultants' Section III narratives. The Court, therefore, is not persuaded that *Smith* relieves the ALJ of her obligation to address the consultants' Section I limitations.

      **3.**        **The ALJ's Reasons for Rejecting Certain of the Consultants' Moderate Limitations Are Not Supported by Substantial Evidence**

It is undisputed that when assessing an RFC, the ALJ must explain what weight she assigns to each opinion and why.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§404.1527(e)(2)(ii), 416.927(e)(2)(ii)).[28]  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity."  *Chapo*, 682 F.3d at 1288.  Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Chapo,* 682 F.3d at 1291 (internal quotation marks omitted) (quoting *Haga*, 482 F.3d at 1208).  Rather, ALJs are required to provide "appropriate

---

[28] Ms. Fatheree filed her applications prior to March 27, 2017.  As such, these regulations apply to her claim.  See 82 Fed. Reg. 5844 (Jan. 18, 2017).

25

explanations for accepting or rejecting such opinions."  SSR 96-5p, 1996 WL 374183, at *5.[29]

"If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must

explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184, at *7.

In discounting the consultants' assessed limitations, the ALJ discussed Ms. Fatheree's

testimony and function report in which she described difficulty leaving her home due to

discomfort with other people seeing her, problems getting along with people, difficulty

maintaining friendships and relationships, and difficulty controlling her temper and being

confrontational.  Tr. 25-26.  The ALJ contrasted Ms. Fatheree's testimony, however, with

certain behavioral health treatment notes wherein Ms. Fatheree's mental status exams showed

her to be adequately groomed, and have normal eye contact, thought processes and motor

activity.  *Id.*  The ALJ also cited to certain treatment notes prepared by Ms. Fatheree's treating

psychologist, Dr. Davis, to explain that although Ms. Fatheree reported she would stay inside for

days at a time, she also reported "spending more time with other people outside of her house."

Tr. 25.  The ALJ also surmised that although Ms. Fatheree described difficulty controlling her

emotions in her interactions with others, "she appeared to make good progress in learning to

regulate her emotions and respond appropriately to difficult people and stressful social

situations."  *Id.*  The ALJ broadly concluded that "[c]onsidering these factors in light of the

treatment records showing *largely stable* symptoms after the spring of 2016," that moderate or

greater limitations were not supported in the area of understanding, remembering and applying

information and in the area of adaptation, and that marked or greater limitations were not

---

[29] *See* fn. 13*, supra.*

supported in the area of sustained concentration and persistence and in the area of social interactions.  Tr. 24-27 (emphasis added).

The Court finds the ALJ's explanations for discounting the consultants' opinions are not supported by substantial evidence.  Although the ALJ correctly cites favorable portions of Ms. Fatheree's mental status exams, the ALJ nonetheless failed to present the full context of Ms. Fatheree's behavioral health records cited, *i.e.,* that Ms. Fatheree reported ongoing and consistent symptoms associated with and treatment for bipolar disorder.  "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to h[er] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)).  Additionally, while the ALJ cited five treatment notes wherein Dr. Davis indicated that Ms. Fatheree recognized the benefit of and did report spending limited time with a limited number of friends, Dr. Davis also indicated that Ms. Fatheree reported not wanting to be around others.  Tr. 614, 623, 637, 647, 658.  Indeed, Dr. Davis noted Ms. Fatheree's difficulty with self-isolating in *twenty* treatment notes the ALJ did not cite.  Tr. 569, 574, 605, 607, 609, 613, 615, 618, 620, 655, 659, 661, 663, 665, 667, 669, 671, 673, 675,  677.  Further, while the ALJ cited *one* of Dr. Davis's treatment notes in which Ms. Fatheree reported that she was  "learning to regulate her emotions in healthy ways" (Tr. 623), the Court's review of *all fifty-two* of Dr. Davis's notes demonstrates that Ms. Fatheree had persistent and ongoing challenges with, *inter alia*, bipolar depression, anxiety, isolation, irritability, impulsivity, and social interactions.  Tr. 569-78.  The Court also notes that Dr. Davis's diagnoses throughout the course of Ms. Fatheree's therapy consistently remained either Bipolar II disorder moderate depressed with anxious distress in partial remission and/or Bipolar II disorder severe depressed with anxious distress in partial remission.  *Id.*  It appears to

the Court, therefore, that the ALJ's broad conclusion that Ms. Fatheree's symptoms were *largely stable* after the spring of 2016 relies on adopting the most favorable parts of certain behavioral health mental status exams and a handful of Dr. Davis's fifty-two treatment notes, while rejecting uncontroverted and significantly probative evidence, which the ALJ cannot do. *See Clifton*, 79 F.3d at 1010; *see also Grogan*, 399 F.3d at 1261-62 ("[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (although we do not reweigh the evidence or try the issues de novo, *Sisco v. United States Dep't of Health and Human Servs.,* 10 F.3d 739, 741 (10th Cir.1993), we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met).  The Court, therefore, finds that the ALJ's reasons for discounting the consultants' opinions are not supported by substantial evidence.

For all of the foregoing reasons, the Court finds that the ALJ's RFC is contrary to law and not supported by substantial evidence.  This case, therefore, requires remand.

### B.    Remaining Issues

The Court will not address Ms. Fatheree's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV.  <u>Conclusion</u>

For the reasons stated above, the Court finds Ms. Fatheree's Motion to Reverse or

Remand (Doc. 21) is well taken and is **GRANTED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding By Consent**